IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILIP J. ARCURI, et al.,

                Plaintiffs,

    v.

COUNTY OF MONTGOMERY, et al.,

                Defendants.

CIVIL ACTION
NO. 20-5408

## OPINION

**Slomsky, J.**                                              **May 6, 2021**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................... 2

III. STANDARD OF REVIEW .................................................................................. 8

IV. ANALYSIS ........................................................................................................... 9

  A.  The Claims Against Defendant MCCF in Counts I and II Will Be Dismissed ................ 10

  B.  The Claims Against Defendant Montgomery County in Counts I and II
      Will Be Dismissed ........................................................................................ 10

      1.  The Analytical Framework of 42 U.S.C. § 1983 and
           Monell v. Department of Social Services ................................................... 11

      2.  The Complaint Does Not Sufficiently Allege a Municipal Policy, Custom,
           or Deliberate Indifference ........................................................................ 12

          a.  The Claim of a Policy or Custom by Montgomery County ..................... 13

          b.  The Claim of Deliberate Indifference by Montgomery County .............. 15

  C.  The Claim Against Individual Defendants and PrimeCare in Count V
      Will Be Dismissed ........................................................................................ 17

1.   Plaintiffs Have Waived Their Claims Against Individual Defendants in Count V ...... 17

2.   Plaintiffs' Fraud and Deceit Claim in Count V Fails to State a Claim Upon
     Which Relief Can Be Granted Regarding any Defendants ........................................... 18

D.   Plaintiffs Will Be Given Leave to File an Amended Complaint ...................................... 21

V.   CONCLUSION ................................................................................................................. 22

## I.  INTRODUCTION

On December 26, 2018, in the early afternoon, Andrea Arcuri reported to the Montgomery County Adult Probation Office showing signs of disorientation and drug use.  (See Doc. No. 1 ¶¶ 25-26, 29.)  By 11:41 p.m. that night, she was pronounced dead from adverse effects of combined drugs, (cocaine, heroin, fentanyl, acetyl fentanyl, buprorion, topiramate, buprenorphine fentanyl and norfentanyl), multi-focal acute pneumonia, and dehydration.  (See id. ¶¶ 52-55.)  Her parents, Plaintiffs Philip and Melanie Arcuri ("Plaintiffs"), as the Administrators of the Estate of Andrea Arcuri ("Decedent"), filed this case, alleging that their daughter's death was caused by the actions and omissions of Montgomery County, Montgomery County Correctional Facility ("MCCF"), thirteen County and MCCF employees ("Individual Defendants"), and PrimeCare Medical, Inc. ("PrimeCare").  (See id. ¶¶ 1-3, 5-20; see also Doc. No. 23 at 2 ¶¶ 1-2.)

On October 29, 2020, Plaintiffs filed a Complaint, asserting that Defendants violated Decedent's civil rights and committed state law torts of negligence and fraud and deceit.[1]  (See Doc. No. 1 at 16, 18, 20, 22, 25.)  On November 27, 2020, Montgomery County, MCCF, and Individual Defendants filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Doc. No. 23 at 2.)  In the Motion, they argue that the civil rights and negligence claims against Montgomery County and MCCF and the fraud and deceit claim against all Defendants should be dismissed. (See id. ¶¶ 3-7.)  Plaintiffs filed a Response in Opposition to the Motion (Doc. No. 26), Defendants filed a Reply (Doc. No. 27), and Plaintiffs filed a Sur Reply Brief (Doc. No. 29).  For reasons set

---

[1]  The Pennsylvania common law cause of action for "fraud and deceit" is analogous to a claim of fraud.  See, e.g., Boland v. Nationwide Mut. Ins. Co., 9 Pa. D. & C. 4th 27, 28 (Ct. Com. Pl. 1991) (referencing the Pennsylvania "common-law tort of fraud and deceit").

forth below, the Motion to Dismiss will be granted.  Plaintiffs will be afforded, however, the opportunity to file an Amended Complaint.

## II.    BACKGROUND[2]

On December 26, 2018, Andrea Arcuri ("Decedent") reported to the Montgomery County Adult Probation Office in Norristown, Pennsylvania "for a required routine visit."[3]  (Doc. No. 1 ¶ 25.)  Upon arriving at the Probation Office, she "presented with indicia of drug use, namely that she was under the influence of heroin . . . , fentanyl and acetyl[ ]fentanyl . . . ."[4]  (Id. ¶ 26.) Montgomery County Probation Officers Sean Gorman and Catherine Hiem observed Decedent's condition and transported her to the Montgomery County Correctional Facility ("MCCF").  (Id. ¶¶ 18-19, 26-27.)

At around 2:15 p.m., Decedent arrived at MCCF where Corrections Officer ("CO") Brian Leister observed her "slumped on the floor in the prison admission area soon after her arrival . . . and her restraints were removed."  (Id. ¶ 28.)  Forty-five minutes later, Decedent was escorted to the medical screening area where Medical Assistant ("MA") Marycka Downing observed that

---

[2]  The following facts are taken from the Complaint (Doc. No. 1) and attached exhibits and are accepted as true for purposes of this Opinion.  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents.").

[3]  The Complaint does not elaborate on why Decedent reported to the Probation Office.  (See Doc. No. 1 ¶ 25.)

[4]  "Fentanyl is a powerful synthetic opioid analgesic that is similar to morphine but is 50 to 100 times more potent."  See Fentanyl, NATIONAL INSTITUTE ON DRUG ABUSE (last visited May 6, 2021), https://www.drugabuse.gov/drug-topics/fentanyl.  Acetyl fentanyl also is a "potent opioid analgesic," similar to fentanyl.  See Acetyl Fentanyl, DRUG ENFORCEMENT ADMINISTRATION, OFFICE OF DIVERSION CONTROL, DRUG & CHEMICAL EVALUATION SECTION (July 2015), https://www.ddap.pa.gov/Lists/Announcements/Attachments/119/Acetyl%20 fentanyl%20fact%20sheet.pdf.

Decedent exhibited signs of heroin use, disorientation, and inability to keep her eyes open, hold her head up, or answer simple questions.  (See id. ¶¶ 29, 31.)  As a result, Decedent was referred to the Medical Housing and Mental Health Unit of MCCF.  However, she was never transferred to the Unit and instead was escorted to a cell.  (See id. ¶¶ 30, 32, 44.)

At around 3:35 p.m., Licensed Practical Nurse ("LPN") Nicole McFadden noticed Decedent appeared dehydrated and gave her water and Gatorade to drink.  (See id. ¶¶ 33, 44.)  Next, from around 4:08 p.m. to 5:14 p.m., COs Leister, Tiare Nimmo-Lee, Dominic Williams, and Chantel Roundtree walked past Decedent's cell without any "indication that [they] . . . evaluated [D]ecedent or . . . ascertained that she was not in distress."  (Id. ¶ 39; see also id. ¶¶ 34-38.)  Despite over an hour without interaction, at 5:15 p.m., three hours after Decedent's arrival at MCCF, "Corporal E. Mercer observed CO Nimmo-Lee attempt[ing] to escort [D]ecedent[,] but she became unstable and slumped to the floor . . . ."  (Id. ¶ 40.)  Decedent was then taken to the admissions area to stabilize herself, and afterwards CO Youngshil Dunbar escorted her back to a cell, observing "no difficulty in her gait . . . ."  (Id. ¶ 42; see also id. ¶ 41.)  Thereafter, at around 6:24 p.m., CO Kalena Annis provided fluids and food to Decedent.  (See id. ¶¶ 43, 48.)

Throughout the rest of the evening, CO Annis intermittently "check[ed] the inmates," without noting any details or observations regarding Decedent's condition.  (Id. ¶ 49) (quotation marks omitted).  Later, at 10:23 p.m., COs Jeffrey Tratenburg and Daniel White conducted a head count of the prisoners and "observed [D]ecedent sitting upright on the bench in the cell and alert." (Id. ¶ 50.)  Half-an-hour later, despite Decedent's alleged demeanor during the head count, CO Gregory Pinciotti and MA Irma Arias noticed Decedent had shallow breathing, discolored skin, and no pulse, so they sought medical attention for her.  (See id. ¶ 51.)  Less than an hour later, Decedent was pronounced dead at Einstein Montgomery Hospital.  (See id. ¶ 52.)

The next day, an autopsy was performed, and it was determined that her death was caused by "adverse effects of combined drugs (heroin, fentanyl, acetyl[ ]fentanyl, buproprion, topiramate, buprenorphine fentanyl and norfentanyl) and cocaine use." (Id. ¶ 53.) Additionally, "[d]ehydration secondary to opiate withdrawal was a substantial factor in [her] death." (Id. ¶ 54.) The autopsy also revealed that the concentration of drugs found in her blood suggested that she used heroin while at MCCF. (See id. ¶ 53.) Further, her arms had numerous needle mark scars and her lungs showed multi-focal acute pneumonia. (See id. ¶¶ 53-54.)

On October 29, 2020, Plaintiffs, who are Decedent's parents and Administrators of her estate,[5] initiated this case by filing a Complaint (Doc. No. 1) against Defendants Montgomery County, MCCF, PrimeCare Medical, Inc. ("PrimeCare"),[6] and the following Individual Defendants: (1) CO Brian Leister, (2) CO Tiare Nimmo-Lee, (3) CO Dominic Williams, (4) CO Chantell Roundtree, (5) Corporal E. Mercer, (6) CO Youngshil Dunbar, (7) CO Kalena Annis, (8) CO Jeffrey Tratenburg, (9) CO Daniel White, (10) CO Eric Mitchell, (11) CO Gregory Pinciotti, (12) CO Sean Gorman, (13) CO Catherine Hiem.[7] (See id. at 4-5.) In the Complaint, Plaintiffs assert five violations of federal and state law against Defendants:

> Count I:     Civil Rights [claim under] 42 U.S.C. § 1983 against all
>              Defendants[;] . . .
>
> Count II:    Civil Rights [claim] against Defendants Montgomery County and
>              MCCF[;] . . .

---

[5]   Plaintiffs brought this action on behalf of Decedent's estate under the Pennsylvania Survival Act, 42 Pa.C.S. § 8302.

[6]   PrimeCare is "responsible for medical care at MCCF . . . and . . . act[s] through their agents or ostensible agents in providing medical treatment to inmates at MCCF." (Doc. No. 1 ¶ 20.)

[7]   The listed Individual Defendants includes all persons discussed supra with the exception of MA Downing, LPN McFadden, and MA Arias. Moreover, although not addressed by the parties, the Complaint does not explain CO Mitchell's personal involvement with Decedent.

Count III:      State Law Negligence [claim] against Defendant PrimeCare[;] . . .

Count IV:      State Law Negligence [claim] against Defendants Montgomery County and MCCF[;] . . .

Count V:       State Law Fraud and Deceit [claim] against all Defendants.

(Id. at 16, 18, 20, 22, 25.)

Regarding their civil rights claims against Montgomery County and MCCF Defendants, Plaintiffs make the following allegations concerning policies, customs, or deliberate indifference of Defendants:

Montgomery County and [MCCF] failed to properly train, and/or failed to have a proper policy regarding training correctional officers and medical providers on the appropriate treatment and monitoring of individuals experiencing opiate withdrawal . . . [;] failed to properly supervise and/or monitor and/or failed to have a proper policy regarding supervising and/or monitoring, correctional officers and medical providers on the appropriate treatment and monitoring of individuals experiencing opiate withdrawal . . . [;] maintained policies[,] procedures[,] and practices that [Defendants] knew provided inadequate treatment and monitoring of individuals experiencing opiate withdrawal that had previously resulted in the deprivation of constitutional rights and the death of inmates statewide undergoing opiate withdrawal.  Despite this, [D]efendant[s] failed to amend, revise, or replace these policies, procedures, and practices with appropriate policies, procedures, and practices . . . [;] failed to enforce the written policies regarding correctional officers and medical providers treatment and monitoring of individuals experiencing opiate withdrawal, specifically requirements that they be observed every thirty minutes by corrections officers . . . [;] failed to properly supervise and/or monitor and/or failed to have a proper policy regarding supervising and/or monitoring, correctional officers and medical providers on the appropriate treatment and monitoring of individuals experiencing opiate withdrawal . . . [;] maintained policies, procedures and practices that continued to delegate the responsibility for monitoring individuals with a serious medical need experiencing opiate withdrawal to inmate "babysitters" despite knowing that this practice resulted in the deprivation of constitutional rights and/or the death of inmates undergoing opiate withdrawal. Despite this, Defendants failed to amend, revise, or replace policies, procedures, and practices regarding delegating responsibility for monitoring individuals experiencing opiate withdrawal to inmate "babysitters" with appropriate policies, procedures, and practices . . . [;] failed to properly train inmate "babysitters" in monitoring individuals experiencing opiate withdrawal . . . .

5

(Id. ¶¶ 73-79.)  Further, regarding their fraud and deceit claim in Count V, Plaintiffs aver that all

"Defendants . . . engaged in a pattern of fraudulent and deceitful behavior for the purpose of

covering up their deliberate and negligent acts which resulted in [D]ecedent's death . . . ."  (Id.

¶ 90.)  Plaintiffs then list the purported coverups as follows:

> Given the known half-life of six monoacetyl morphine, it is unlikely that six
> monoacetyl morphine would have been present at the time of death, as blood
> analysis shows, if [D]ecedent did not use heroin when she was in the custody of the
> prison. . . .  It is unlikely that [D]ecedent could have presented no signs of medical
> distress at 10:23 [p.m.] as reported by correctional officers only to be found dead
> at 10:56 [p.m.] especially if the immediate cause[s] of her death were dehydration
> and pneumonia. . . .  It is unlikely that [D]ecedent's vital signs were exactly the
> same at 3:09 [p.m.] as they were at 6:41 [p.m.], suggesting that the second set of
> vital signs were not actually taken but were noted some time later based off the
> prior set of vital signs. . . .  Defendants deceitfully [led] investigators to believe that
> [D]ecedent was well by falsely suggesting that [D]ecedent was checked on when
> correctional officers merely walked by her cell. . . .  The above actions and
> omissions of [D]efendants amount to a fraudulent and deceitful cover-up by
> [D]efendants in order to make it appear as if they hold no or a reduced culpability
> in [D]ecedent's death.

 (Id. ¶¶ 90-91.)

On  November  27,  2020,  Defendants  Montgomery  County,  MCCF,  and  Individual

Defendants filed a Motion to Dismiss[8] the following claims in the Complaint: (1) the civil rights

claims against the County and MCCF only in Counts I and II; (2) the state law negligence claim

against the County and MCCF in Count IV; and (3) the state law fraud and deceit claim against

the County, MCCF, and Individual Defendants in Count V.[9]  (See Doc. No. 23 ¶¶ 3-7.)  In the

---

[8]   Initially, Individual Defendants Dominic Williams and Sean Gorman did not join in the Motion
to Dismiss.  However, on December 23, 2020, they filed an uncontested Motion to Join in the
Motion to Dismiss (Doc. No. 28) which the Court granted.  (See Doc. No. 30.)

[9]   Defendants do not challenge the civil rights claims made against Individual Defendants in
Count I.  In addition, Defendant PrimeCare, the only Defendant named in Count III, did not file
a motion to dismiss the Complaint, and the claims against it in Counts I and III need not be
reviewed in this Opinion.

Motion, they first argue that Counts I and II do not state a claim against the County and MCCF because Plaintiffs' "purely conclusory allegation[s] of the existence of a" custom, policy, or their deliberate indifference does not establish a <u>Monell</u> claim against them.  (<u>Id.</u> at 12.)  <u>See also</u> <u>Monell v. Dep't of Soc Servs</u>, 436 U.S. 658, 690 (1978).  Second, MCCF argues that all claims against it must be dismissed because "as a mere department, agency or facility of the County," it is not subject to suit under 42 U.S.C. § 1983 ("Section 1983").  (<u>Id.</u> ¶ 4.)  Third, the County and MCCF argue that the claims in Counts IV and V "[are] barred as a matter of law by the immunity provided under Pennsylvania's Political Subdivision Tort Claims Act . . . ."  (<u>Id.</u> ¶ 5; <u>see</u> <u>also</u> <u>id.</u> ¶ 6.)  Finally, Individual Defendants assert that the claims against them in Count V must be dismissed because the required elements of a fraud and deceit claim are not sufficiently alleged.  (<u>See</u> <u>id.</u> ¶ 7.)  <u>See also</u> <u>Egli v. Strimel</u>, No. 14-6204, 2015 WL 5093048, at *6 (E.D. Pa. Aug. 28, 2015) (enumerating six elements to state a claim of fraud and deceit under Pennsylvania law).

On December 15, 2020, Plaintiffs filed a Response (Doc. No. 26), arguing that the Complaint contains enough facts to permit a reasonable inference of liability against the County, MCCF, and Individual Defendants, to withstand the Motion to Dismiss.  (<u>See</u> <u>id.</u> at 4-12.)  Next, Plaintiffs aver that MCCF "is a creature of the legislature . . . . [and] a distinct legal entity," and therefore should not be dismissed.  (<u>Id.</u> at 12.)  Finally, Plaintiffs agree to the dismissal of Count IV in its entirety and Count V against the County and MCCF only.  (<u>See</u> <u>id.</u>)

On December 22, 2020, Montgomery County, MCCF, and Individual Defendants filed a Reply (Doc. No. 27), again alleging that MCCF is not a proper Defendant, and consenting to dismissal of Counts IV and V against the County and MCCF.  (<u>See</u> <u>id.</u> at 2-5.)  Additionally, they highlight Plaintiffs' failure to address Individual Defendants' arguments to dismiss Count V, asserting that this failure constitutes a waiver and requires dismissal of the Count with prejudice.

(See id. at 6-7.)  The next day, Plaintiffs filed a Sur Reply Brief (Doc. No. 29) that primarily reasserts the arguments set forth in their Response and disputes that their failure to respond to Individual Defendants' arguments to dismiss Count V acts as a waiver.  (See id. at 1-3.)

For reasons that follow, the Court will dismiss Counts I, II, IV, and V against Montgomery County and MCCF and Count V against Individual Defendants and PrimeCare.[10]  However, the Court will grant Plaintiffs leave to file an Amended Complaint.

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that

---

[10]   Although Defendant PrimeCare has not filed a Motion to Dismiss, for reasons discussed infra, Count V fails to state a claim against any Defendant and will be dismissed in its entirety.

a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.   ANALYSIS

Defendants Montgomery County, MCCF, and Individual Defendants argue that Counts I, II, IV, and V against the County and MCCF and Count V against Individual Defendants should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.  (See Doc. No. 23 ¶¶ 3-7.)  First, the Court will analyze whether

MCCF is a proper party in this case.  Second, it will discuss Plaintiffs' civil rights claims against the County and MCCF in Counts I and II.  Finally, the Court will address Plaintiffs' claims of fraud and deceit in Count V.

As a threshold matter, Plaintiffs have agreed to dismiss Count IV in its entirety, which names only the County and MCCF, and Count V against only the County and MCCF.  (See Doc. No. 26-2 at 12.)  Thus, the Court need not address the sufficiency of Count IV or of Count V regarding the County and MCCF.

### A.     The Claims Against Defendant MCCF in Counts I and II Will Be Dismissed

Initially, the Court will dismiss the claims against MCCF, which is a named Defendant in Counts I and II.  (See Doc. No. 1 at 16, 18.)  "The Third Circuit has explicitly stated that, for purposes of [S]ection 1983 liability, [a] municipality and [its] . . . department[s] are treated as a single entity."  Brown v. Cohen, No. 09-2909, 2011 WL 2110827, at *4 (E.D. Pa. Apr. 21, 2011) (quotation mark omitted) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997)).  County subdivisions and facilities also are merged with a municipality for purposes of Section 1983 liability.  See, e.g., Wiggins v. Montgomery Cnty. Corr. Facility, No. 87-6992, 1987 WL 14721, at *1 (E.D. Pa. Nov. 16, 1987) ("[T]he Montgomery County Correctional Facility is not a person under § 1983.  For this reason alone, the complaint must be dismissed.").  Thus, because MCCF is a subdivision of Montgomery County, it is not amenable to suit, and the claims against it will be dismissed.  As noted, Montgomery County, which has been sued in this case, is the properly named Defendant.

### B.     The Claims Against Defendant Montgomery County in Counts I and II Will Be Dismissed

Plaintiffs' claims in Counts I and II against Defendant Montgomery County will be dismissed for failure to state a claim.  In both Counts, Plaintiffs claim that Montgomery County

violated Decedent's rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (See Doc. No. 1 ¶¶ 63, 64, 72.)  In the Motion to Dismiss, the County submits that these claims should be dismissed because Plaintiffs fail to allege any facts showing that Decedent's death resulted from its policies, customs, or deliberate indifference.  (See Doc. No. 23 at 11-16.) The Court agrees with the County's argument and, as noted, will dismiss the claims against it in Counts I and II.  Moreover, although they are styled as separate claims, Counts I and II allege identical Monell claims against the County and will be addressed in tandem.[11]

### 1.    The Analytical Framework of 42 U.S.C. § 1983 and Monell v. Department of Social Services

Plaintiffs' claims in Counts I and II against Montgomery County are pursuant to 42 U.S.C. § 1983.  (See Doc. No. 1 ¶¶ 116-17.)  Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983.

In Monell v. Department of Social Services, the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in limited circumstances.  436 U.S. 658, 690 (1978).  Under Monell, to state a Section 1983 claim against a municipality, a plaintiff must

---

[11]  Plaintiffs note that the Monell claim appears only in Count II, and a separate civil rights claim against the County that does not fall under Monell is raised in Count I.  (See Doc. No. 26-2 at 4-5.)  As will be discussed in further detail, Monell provides the only mechanism to state a claim under Section 1983 against municipal entities.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978).  For this reason, the Court will address Plaintiffs' claims against Montgomery County in Counts I and II as attempting to state a Monell claim against the County. In addition, the factual predicate for Counts I and II are identical.

establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference.  See id. at 694-95.

The gravamen of Monell and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered."  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  In other words, the constitutional deprivation must have its origin in a policy, custom, or deliberate indifference of a municipality.  See Monell, 436 U.S. at 694.  Liability based on the actions of municipal officials only exists where it can be shown that the officials acted in accordance with that policy, custom, or deliberate indifference.  See id.  Accordingly, municipalities cannot be held liable under Section 1983 for the acts of its employees based on the doctrine of respondeat superior or for other forms of vicarious liability.  Id. at 692 (noting that the language of Section 1983 "cannot easily be read to impose liability vicariously on government bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); see also Reitz v. Cnty. of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[M]unicipal liability simply cannot be predicated upon a showing of respondeat superior . . . .").

### 2.     The Complaint Does Not Sufficiently Allege a Municipal Policy, Custom, or Deliberate Indifference

The claims against Montgomery County in Counts I and II must be dismissed because Plaintiffs have not pled sufficient facts to establish the second prong of a Monell claim: that a municipal policy, custom, or deliberate indifference was the cause of Decedent's alleged Eighth and Fourteenth Amendment violations.  See Monell, 436 U.S. at 694-95.[12]

---

[12] Under Monell, Plaintiffs also must establish that a constitutionally protected right has been violated.  See Monell, 436 U.S. at 694-95.  Because, as will be discussed below, Plaintiffs have not met the second element, the Court need not address also whether Plaintiffs have properly

a.        The Claim of a Policy or Custom by Montgomery County

There are numerous ways a plaintiff can sufficiently allege the existence of a municipal policy or custom to establish a Monell claim.  For example, a plaintiff can cite the official policy. See id. at 690 (stating that a municipality may be sued under Section 1983 when it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").  Alternatively, a plaintiff can make specific reference to "multiple incidents" implicating a particular custom.  See Harris v. City of Philadelphia, 171 F. Supp. 3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons).  A plaintiff also can establish custom by conducting a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right.  See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force).

---

pled that Decedent's constitutionally protected rights under the Eighth and Fourteenth Amendments were violated.

The Court does note, however, that without clarification on why Decedent reported to the Montgomery County Adult Probation Office, it is not clear that Plaintiffs can state an Eighth Amendment violation.  Although sentenced prisoners may bring claims under the Eighth Amendment's Cruel and Unusual Punishment Clause, this clause "does not apply until an inmate has been both convicted of and sentenced for his crimes." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020).  Despite this limitation, courts can construe potential Eighth Amendment claims by pretrial detainees as violations of the due process clauses of the Fifth and Fourteenth Amendments. Id.; see also Dittmar v. Harmon, No. 19-1537, 2021 WL 872043, at *6 (E.D. Pa. Mar. 9, 2021) (construing alleged Eighth Amendment claim by pretrial detainee as Fourteenth Amendment Due Process claim).  For this reason, Plaintiffs must elaborate on whether Decedent was in custody as a result of a prior conviction during her detention at the Probation Office and MCCF for the Court to determine whether the Eighth Amendment claim is appropriate here.

But "'simply paraphras[ing] § 1983' does not meet Rule 8's pleading requirements because it fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." Wood v. Williams, 568 F. App'x 100, 104 (3d Cir. 2014) (alteration in original) (citing McTernan v. City of York, 564 F.3d 636, 658-59 (3d Cir. 2009)); see also Saleem v. Sch. Dist. of Philadelphia, No. 12-3193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013) (explaining that pleadings "bereft of any assertions of relevant facts," containing only the "plaintiff's bare allegations . . . are insufficient to show his entitlement to relief."). Accordingly, conclusory and general claims that recite Section 1983 will not satisfy federal pleading requirements because they "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." Wood, 568 F. App'x at 104 (quoting McTernan, 564 F.3d at 658-59).

Here, the Complaint's bare and conclusory allegations are insufficient to state a claim under Monell. As noted above, Plaintiffs make the following accusations against Montgomery County regarding their policies or customs:

> Montgomery County and [MCCF] failed to properly train, and/or failed to have a proper policy regarding training correctional officers and medical providers on the appropriate treatment and monitoring of individuals experiencing opiate withdrawal . . . [;] failed to properly supervise and/or monitor and/or failed to have a proper policy regarding supervising and/or monitoring, correctional officers and medical providers on the appropriate treatment and monitoring of individuals experiencing opiate withdrawal . . . [;] maintained policies[,] procedures[,] and practices that [Defendants] knew provided inadequate treatment and monitoring of individuals experiencing opiate withdrawal that had previously resulted in the deprivation of constitutional rights and the death of inmates statewide undergoing opiate withdrawal. Despite this, [D]efendant[s] failed to amend, revise, or replace these policies, procedures, and practices with appropriate policies, procedures, and practices . . . [;] failed to enforce the written policies regarding correctional officers and medical providers treatment and monitoring of individuals experiencing opiate withdrawal, specifically requirements that they be observed every thirty minutes by corrections officers . . . [;] failed to properly supervise and/or monitor and/or failed to have a proper policy regarding supervising and/or monitoring, correctional officers and medical providers on the appropriate treatment and monitoring of

individuals experiencing opiate withdrawal . . . [;] maintained policies, procedures and practices that continued to delegate the responsibility for monitoring individuals with a serious medical need experiencing opiate withdrawal to inmate "babysitters" despite knowing that this practice resulted in the deprivation of constitutional rights and/or the death of inmates undergoing opiate withdrawal. Despite this, Defendants failed to amend, revise, or replace policies, procedures, and practices regarding delegating responsibility for monitoring individuals experiencing opiate withdrawal to inmate "babysitters" with appropriate policies, procedures, and practices . . . [;] failed to properly train inmate "babysitters" in monitoring individuals experiencing opiate withdrawal . . . .

(Doc. No. 1 ¶¶ 73-79.)

In the above recitation, Plaintiffs merely use the framework of a <u>Monell</u> claim and do not proffer facts to suggest that Montgomery County created or implemented the alleged policies or customs. Further, the allegations in the Complaint concern only the purported experiences of Decedent with the County. (<u>See</u> <u>id.</u>); <u>see</u> <u>also</u> <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793 (3d Cir. 1989) (holding a single incident ordinarily "does not suffice to establish either an official policy or custom."). No specific policy, statement, ordinance, regulation, or decision officially adopted and promulgated by County officials has been noted. And absent a showing of comparable instances evidencing a pattern, Plaintiffs' allegations do not show the existence of a custom. Thus, Plaintiffs' accusations fall short of showing that a County-wide policy or custom was in place.

### b.   The Claim of Deliberate Indifference by Montgomery County

In addition, to the extent Plaintiffs attempt to establish that the County was deliberately indifferent to systemic Eighth and Fourteenth Amendment abuses by failing to properly train its employees to care for individuals suffering from opiate withdrawal, this claim also fails. In certain circumstances, a municipality may be liable under Section 1983 when it decides "not to train certain employees about their legal duty to avoid violating citizens' rights," and this failure "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (second alteration

in original) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)).[13]  But "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  <u>Id.</u> at 62 (quoting <u>Bd. of Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 409 (1997)).

In this regard, the Third Circuit considers the following factors in determining whether the deliberate indifference standard is met:

> (1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

<u>Estate of Roman v. City of Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting <u>Doe v. Luzerne Cnty.</u>, 660 F.3d 169, 180 (3d Cir. 2011)).

In the Complaint, Plaintiffs provides no facts to support any of these three factors.  Other than asserting conclusory allegations that the County failed to train its employees, Plaintiffs provide no facts suggesting the County was on notice that it had failed to train its employees to monitor individuals suffering from opiate withdrawal.  (<u>See</u> Doc. No. 1 ¶ 79.)  Further, Plaintiffs do not state how failing to monitor individuals "will frequently cause deprivation of constitutional rights."  <u>Estate of Roman</u>, 914 F.3d at 798.  As a result, Plaintiffs have not properly alleged that the County has engaged in deliberate indifference.  Consequently, for all the above reasons, Counts I and II will be dismissed as to Montgomery County.

---

[13]  The idea behind the failure-to-train theory is that when "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011).  A city's "policy of inaction" in the face of such notice is functionally equivalent to a decision to violate the Constitution and thus, in effect, becomes the city's custom.  <u>Id.</u> at 61.

**C.     The Claim Against Individual Defendants and PrimeCare in Count V
Will Be Dismissed**

Plaintiffs' claims in Count V against Individual Defendants and PrimeCare will be
dismissed because Plaintiffs have waived the claim against the Individual Defendants and the
Complaint does not allege facts to establish the elements of a fraud and deceit cause of action.
Each of these conclusions will be discussed in turn below.

**1.     Plaintiffs Have Waived Their Claims Against Individual
Defendants in Count V**

Plaintiffs have waived their claim against Individual Defendants in Count V by failing to
substantively respond to Individual Defendants' arguments to dismiss the claim against them.  As
will be discussed in more detail infra, Individual Defendants argue in the Motion to Dismiss that
Count V should be dismissed against them for failing to state a claim.  (See Doc. No. 23 at 20.)
Plaintiffs' only response to Defendants' arguments to dismiss Count V is that they "consent to the
dismissal of Count V . . . as to the County and MCCF defendants only."  (Doc. No. 26-2 at 12.)
Because Plaintiffs failed to substantively address Individual Defendants' arguments on why Count
V should be dismissed against them, they have abandoned the claim.

Under this Court's local rules, a party opposing a motion must serve a brief in opposition
within fourteen days after service of the motion.  Loc. R. Civ. P. 7.1(c).  Other courts in this district
have considered a plaintiff's failure to substantively address a defendant's arguments for dismissal
as an abandonment of those claims, begetting dismissal of the claim.  See Levy-Tatum v. Navient
Sol., Inc., 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (dismissing claims with prejudice where
plaintiff failed to make substantive arguments against dismissal); Jackson v. J. Lewis Crozer
Library, No. 07-0481, 2007 WL 2407102, *6 (E.D. Pa. Aug. 22, 2007) (granting motion to dismiss
as uncontested where plaintiff did not substantively respond to motion);  see also Griglak v. CTX

Mortg. Co., No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) (holding failure to substantively respond to argument when filing a response in opposition results in waiver of claim not addressed); Duran v. Equifirst Corp., No. 09-03856, 2010 WL 918444, at *3 (D.N.J. Mar. 12, 2010) (finding plaintiff waived cause of action for failing to address motion to dismiss); Marjac, LLC v. Trenk, No. 06-1440, 2006 WL 3751395, at *5 n.3 (D.N.J. Dec. 19, 2006) (considering plaintiff's Section 1983 claims as abandoned for failing to address motion to dismiss).

In accordance with the above-cited decisions, Plaintiffs' failure to substantively respond to Individual Defendants' arguments to dismiss Count V constitutes a waiver and the claim must be dismissed. Despite this waiver, in the interest of judicial economy, the Court still will address the substance of Individual Defendants' argument to dismiss the claim.

### 2. Plaintiffs' Fraud and Deceit Claim in Count V Fails to State a Claim Upon Which Relief Can Be Granted Regarding any Defendants

Plaintiffs' claim in Count V fails to state a claim upon which relief can be granted against any Defendant because Plaintiffs fail to plead the required elements of a fraud and deceit claim. In the Motion to Dismiss, Individual Defendants submit that the Complaint does not state that Plaintiffs justifiably relied upon the misrepresentations Individual Defendants allegedly made or that they suffered an injury proximately caused by the alleged misrepresentations.[14] (See Doc. No. 23 at 22-23.)

---

[14] As noted above, although the Complaint pleads a claim of fraud in Count V against all Defendants, the Court need not address the claim against the County and MCCF since Plaintiff has agreed to dismiss Count V against them. (See Doc. No. 26-2 at 12.) And although PrimeCare has not filed a motion to dismiss any claim against it, given the evident insufficiency of the Count V claim, it will be dismissed against PrimeCare too.

To survive a Rule 12(b)(6) motion to dismiss a claim of fraud and deceit under Pennsylvania law,[15] Plaintiffs must allege the following elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; . . . (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Egli, 2015 WL 5093048, at *6 (quoting Hart v. Arnold, 844 A.2d 316, 339 n.7 (Pa. Super. Ct. 2005).  Federal Rule of Civil Procedure 9(b) provides a heightened pleading standard for fraud claims, requiring that a plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To meet this standard, a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Here, accepting the allegations in the Complaint as true and reading them in a light most favorable to Plaintiffs, they fail to properly allege a claim of fraud and deceit.  In the Complaint, Plaintiffs assert the following with respect to their fraud and deceit claim:

> Given the known half-life of six monoacetyl morphine, it is unlikely that six monoacetyl morphine would have been present at the time of death, as blood analysis shows, if [D]ecedent did not use heroin when she was in the custody of the prison. . . .  It is unlikely that [D]ecedent could have presented no signs of medical distress at 10:23 [p.m.] as reported by correctional officers only to be found dead at 10:56 [p.m.] especially if the immediate cause[s] of her death were dehydration and pneumonia. . . .  It is unlikely that [D]ecedent's vital signs were exactly the same at 3:09 [p.m.] as they were at 6:41 [p.m.], suggesting that the second set of vital signs were not actually taken but were noted some time later based off the prior set of vital signs. . . .  Defendants deceitfully [led] investigators to believe that [D]ecedent was well by falsely suggesting that [D]ecedent was checked on when correctional officers merely walked by her cell. . . .  The above actions and

---

[15]  The Pennsylvania common law cause of action for "fraud and deceit" is analogous to a claim of fraud, and the elements for both causes of action are the same.  See, e.g., Boland v. Nationwide Mut. Ins. Co., 9 Pa. D. & C. 4th 27, 28 (Ct. Com. Pl. 1991) (referencing the Pennsylvania "common-law tort of fraud and deceit").  Further, it is undisputed that Pennsylvania law applies here.  (See Doc. Nos. 1 ¶¶ 22-23; 23 at 22-23.)

omissions of [D]efendants amount to a fraudulent and deceitful cover-up by [D]efendants in order to make it appear as if they hold no or a reduced culpability in [D]ecedent's death.

(Doc. No. 1 ¶¶ 90-91.)

These allegations fail to meet the elements of a fraud and deceit claim or the requirements of Rule 9(b).  First, Plaintiffs do not provide any representations made to them or Decedent.  They do not identify which Individual Defendants made representations to them or to Decedent, when those representations were made, or the substance of any representations.  Second, because there is no alleged representation made to them, it cannot be determined whether the missing representation was material to Decedent's interactions with the Individual Defendants.  Third, although Plaintiffs assert Defendants deceived investigators to "cover-up" Decedent's death, they do not state facts to show that any statements were made with knowledge of their falsity or recklessly as to whether they were true or false.  Fourth, Plaintiffs' recitation that Defendants misled "investigators" does not show how Plaintiffs were misled by the alleged statements, and they do not state which Defendants took these actions.  Thus, the Court cannot determine whether these actions were made falsely or with intent to mislead.

Fifth, Plaintiffs do not claim that they justifiably relied upon any misrepresentations by Defendants.  In the Complaint, they state that the alleged cover-up was to mislead investigators; however, Plaintiffs do not describe how any misleading statement was justifiably relied upon by them.  Moreover, they do not allege how the purported cover-up caused them injury.  Finally, as shown by the above analysis, the ambiguity of Plaintiffs' claims fails to comply with the pleading requirement set forth in Rule 9(b) for fraud claims.  For these reasons, Plaintiffs' claim of fraud and deceit in Count V does not state a claim and will be dismissed.

Furthermore, the fraud and deceit claim also will be dismissed against PrimeCare. Although PrimeCare has not filed a motion to dismiss, the allegations in Count V do not specifically describe the actions taken by Individual Defendants and PrimeCare, referring only to "Defendants" generically as having committed the alleged fraud.  (See id.)  Thus, all the noted deficiencies in the fraud and deceit claim apply equally to the claim against PrimeCare, and the claim against it must be dismissed too.

### D.      Plaintiffs Will Be Given Leave to File an Amended Complaint

Despite the Complaint's aforementioned deficiencies, Plaintiffs will be granted leave to file an Amended Complaint.  Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "To accomplish the dual objectives of weeding out frivolous cases and keeping federal courts open to legitimate civil rights claims, courts should allow liberal amendment of civil rights complaints under Fed. R. Civ. P. 15(a)."  Rotolo v. Borough of Charleroi, 532 F.2d 920, 923 (3d Cir. 1976).  Additionally, the Third Circuit Court of Appeals has admonished that for civil rights claims, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Here, the Court cannot conclude that allowing amendment would be inequitable or futile. The allegations are considerable and involve the death of a person while in the custody of the County.  It would be in the interest of justice to afford Plaintiffs one more opportunity to file an Amended Complaint to attempt to overcome the deficiencies discussed in this Opinion.  For these

reasons, the Court will grant Plaintiffs leave to file another Complaint in accordance with this Opinion.

## V.       CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 23) filed by Montgomery County, MCCF, and Individual Defendants will be granted.  Count I will be dismissed against the County and MCCF, but not against the Individual Defendants and PrimeCare.  Counts II, IV, and V will be dismissed in their entirety.  Plaintiffs will be granted leave to amend Counts I, II, and V by filing an Amended Complaint.  Pending the filing of the Amended Complaint, only the claims against Individual Defendants and PrimeCare in Count I and the claims against PrimeCare in Count III remain.  An appropriate Order follows.