IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP J. ARCURI and MELANIE ARCURI, Administrators of the ESTATE OF ANDREA MARIE ARCURI, Plaintiffs | : : : : : | NO.: 2:20-CV-05408-JHS<br><br>CIVIL ACTION – LAW<br><br>JUDGE JOEL H. SLOMSKY |
| v. | : : | |
| COUNTY OF MONTGOMERY, MONTGOMERY COUNTY CORRECTIONAL FACILITY, BRIAN LEISTER, TIARE NIMMO-LEE, DOMINIC WILLIAMS, CHANTELL ROUNDTREE, CORPORAL E. MERCER, YOUNGSHIL DUNBAR, KALENA ANNIS, JEFFREY TRATENBURG, DANIEL WHITE, ERIC MITCHELL, GREGORY PINCIOTTI, SEAN GORMAN, CATHERINE HIEM, PRIMECARE MEDICAL, INC., Defendants | : : : : : : : : : : : : : : : | *Electronically Filed*<br><br><br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.     HISTORY OF THE CASE**

This matter arises from the last incarceration of Andrea Arcuri at the Montgomery County Correctional Facility ("MCCF").  Plaintiffs Philip J. Arcuri and Melanie Arcuri ("Plaintiffs") in their own right and on behalf of the Estate of Andrea Arcuri initiated this civil action by filing a Complaint on October 29, 2020.  (Doc. 1).  Plaintiffs claim that the decedent's constitutional rights were violated when the Defendants were deliberately indifferent to decedent's serious medical needs. (Doc. 1, ¶ 62-70).  Plaintiffs also allege 1 count of negligence and 1 count of fraud and deceit against PrimeCare Medical.

The applicable case management Order was issued by this Court on August 2, 2021. (Doc. 40). It required that all dispositive motions shall be filed on or before April 18, 2022. PrimeCare Medical has filed their Motion for Summary Judgment pursuant to the Court's Order contemporaneously with this Brief.

II.     STATEMENT OF FACTS

Plaintiffs filed their Complaint on October 29, 2020. (Doc. 1). The Complaint names PrimeCare Medical as a defendant. PrimeCare Medical, Inc. ("PrimeCare") has a contract with Montgomery County to provide medical services to inmates incarcerated in the Montgomery County Correctional Facility ("MCCF"). The medical department at the MCCF is accredited by the National Commission on Correctional Health Care ("NCCHC"). Decedent, Andrea Arcuri, arrived at the Montgomery County Probation Department on December 26, 2018 at approximately 1:00 p.m. **Exhibit D**, MC0172-MC0173. It was determined that Ms. Arcuri was under the influence of illicit substances, which was a violation of the terms of her probation. **Exhibit D**, MC0172-MC0173. The decision was made to transport Ms. Arcuri to the MCCF. **Exhibit D**, MC0172-MC0173. She was transported by Probation Officer Catherine Heim and Probation Officer Sean Gorman and arrived at approximately 2:17 p.m. **Exhibit D**, MC0172-MC0173.

Ms. Arcuri underwent a receiving screening by Monycka Downing, MA at approximately 2:41 p.m. **Exhibit A**, PCM 00172-PCM 00181. At the time of the medical intake, Ms. Arcuri was under the influence of a combination of substances. **Exhibit A**, PCM 00214-PCM 00215. Ms. Arcuri appeared to be high, and she had track marks on both her arms. **Exhibit A**, PCM 00176-PCM 00177. Ms. Arcuri admitted to using Heroin, Fentanyl and crack. **Exhibit A**, PCM 00214-PCM 00215. Ms. Arcuri's vital signs included a blood pressure of 140/96 and a pulse of 57

documented at approximately 3:09 p.m. **Exhibit A**, PCM 00133-PCM 00134. Additionally, Ms. Downing requested that Nicole McFadden, LPN evaluate Ms. Arcuri since Ms. Arcuri was actively under the influence. **Exhibit A**, PCM 00214-PCM 00215. Nurse McFadden noted that Ms. Arcuri appeared to be dehydrated. **Exhibit A**, PCM 02271. As a result, Ms. Arcuri was provided two cups of Gatorade and one cup of water. **Exhibit A**, PCM 02271. Nurse McFadden obtained orders for detox medications from the on-call medical provider to start Ms. Arcuri on the next day. **Exhibit A**, PCM 02210, PCM 02271. At the time of the receiving screening, it was recommended that Ms. Arcuri be housed in the medical housing unit of the prison. **Exhibit A**, PCM 00214-PCM 00215.

Ms. Arcuri was changed into prison clothing and housed in Cell 9 after her receiving screening, at approximately 3:27 p.m. **Exhibit B**, MC011-MC015. Ms. Arcuri returned to the booking area at approximately 3:44 p.m. and stays there until approximately 3:58 p.m. at which time she was escorted back to Cell 9 by a Correctional Officer. **Exhibit B**, MC011-MC015. Multiple officers walk past, observe, or conduct checks on Ms. Arcuri in her cell at 4:08 p.m., 4:15 p.m., 4:25 p.m., 4:27 p.m., and 5:14 p.m. **Exhibit B**, MC011-MC015. At 5:21 p.m., an Officer escorts Ms. Arcuri to the Admissions area and escorts her back to Cell 9 at approximately 5:23 p.m. **Exhibit B**, MC011-MC015. Multiple officers walk past, observe, or conduct checks on Ms. Arcuri in her cell at 5:25 p.m., 5:38 p.m., 5:47 p.m., 6:01 p.m., 6:09 p.m., and 6:23 p.m. **Exhibit B**, MC011-MC015. At 6:24 p.m., an Officer distributes a sandwich and water to Ms. Arcuri's cell after Ms. Arcuri requested water. **Exhibit B**, MC011-MC015. A relocation form was completed at approximately 6:41 p.m. by PrimeCare employee Lance Bloch, LPN requesting transfer of Ms. Arcuri to the medical housing unit. **Exhibit A**, PCM 00500-PCM 00501. Multiple officers walk

past, observe, or conduct checks on Ms. Arcuri in her cell at 6:33 p.m., 6:34 p.m., 6:44 p.m., 6:56 p.m., 7:28 p.m., 7:41 p.m., 7:43 p.m., 7:52 p.m., 7:58 p.m., 8:00 p.m., 8:04 p.m., 8:08 p.m., 9:14 p.m., 9:35 p.m., 10:21 p.m., 10:23 p.m., 10:25 p.m., and 10:39 p.m. **Exhibit B**, MC011-MC015.

A medical emergency was called at approximately 10:56 p.m. **Exhibit A**, PCM 00214-PCM 00215, PCM 00462-PCM 00463.  Life saving measures were taken by medical staff, correctional staff, and first responders.  **Exhibit A**, PCM 00214-PCM 00215, PCM 00462-PCM 00463. Ms. Arcuri died at a nearby hospital shortly thereafter. **Exhibit A**, PCM 00214.  According to the coroner's report, she died as a result of "adverse effects of combined drugs (heroin, fentanyl, acetylfentanyl, bupropion, topiramate, buprenorphine [and] fluoxetine." **Exhibit C**, PCM 02353-02362.

### III. ISSUES

a. WHETHER SUMMARY JUDGMENT AS TO PLAINTIFF'S § 1983 DELIBERATE INDIFFERENCE CLAIMS SHOULD BE GRANTED IN FAVOR OF PRIMECARE MEDICAL?
b. WHETHER SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S NEGLIGENCE CLAIMS IN FAVOR OF PRIMECARE MEDICAL?
c. WHETHER SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S FRAUD AND DECEIT CLAIMS IN FAVOR OF PRIMECARE MEDICAL?

Suggested Answer as to all: Yes

### IV. ARGUMENT

a. **Standard of Review**

Federal Rule of Civil Procedure 56 governs motions for summary judgment, and states in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A plaintiff must "point to concrete evidence in the record that supports each and every essential element of his case" to survive summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Further, "a party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).

> Additionally, the United States Supreme Court held:
>
> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552-53 (1986). A plaintiff's bald assertions, without any supporting facts, cannot overcome a motion for summary judgment. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993) (where the movant has produced evidence in support of its motion for summary judgment, the non-movant cannot rest on the allegations of the pleadings and must do more than create some metaphysical doubt).

    **b. Plaintiff cannot demonstrate deliberate indifference by PrimeCare Medical.**

To sustain a deliberate indifference to a serious medical need claim, a plaintiff must make: (1) a subjective showing of deliberate indifference on the part of the prison officials; and (2) an

objective showing that the prisoner's medical needs were serious. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

Deliberate indifference encompasses more than inadvertence or a good faith error; it is characterized by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986). For a claim of deliberate indifference against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005). The Third Circuit found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

Deliberate indifference, being a subjective state of mind, may be shown by circumstantial evidence. *Pearson*, 850 F.3d at 535. Deliberate indifference exists in two forms, which include denial of medical care and inadequate medical treatment. *Id.* When the latter is alleged, it is "presume[d] that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Id.* Finally, "the mere receipt of inadequate medical care does not itself amount to deliberate indifference - the defendant must also act with the requisite state of mind when providing that inadequate care." *Id.* Thus, a plaintiff may show the objective inquiry regarding

the adequacy of medical treatment with the aid of expert testimony, while the subjective intent of the defendant can be show circumstantially without expert testimony. *Id.* at 535-36.

Negligent misdiagnosis or an inadvertent failure to provide care does not establish a Constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). "The courts will not intervene upon allegation of mere negligence, mistake or difference of opinion." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, there must be proof that the indifference alleged was deliberate and actions intentional. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims sounding in state tort law. *Bednar v. Cty. of Schuylkill*, 29 F.Supp.2d 250, 253 (E.D. Pa. 1998). A disagreement between a medical provider and an inmate as to the medical diagnosis and treatment does not constitute deliberate indifference. *Pearson*, 850 F.3d at 535.

It is well established that vicarious liability is not recognized under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036 (1978). Therefore, "[a] private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." *Henry v. Buskirk,* 2011 U.S. Dist. LEXIS 18644 *10 (E.D. Pa. 2011) (*citing Natale v. Camden Co. Correctional Facility*, 318 F.3d 575, 583-584 (3d Cir. 2003); *Monell*, 436 U.S. at 690-92 (1978)). Not all action rises to the level of a custom or policy. *Natale*, 318 F.3d at 584. A policy is made when a decision maker possessing final authority to establish municipal policy with respect to the

action issues a final proclamation, policy or edict. *Id.* at 583  A custom is an act, while not approved by a decision maker, is so widespread as to have the force of law. *Id.* at 583.

A plaintiff must also show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (*quoting City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989)) (emphasis added).  It must be the policymaker's actions that "directly caused constitutional harm." *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 175-176 (3d Cir. 2001).

In the present matter, Plaintiffs cannot demonstrate an underlying constitutional violation. PrimeCare's policies and procedures are consistent with national accreditation standards. Additionally, Plaintiff's own proposed expert, Dr. Guzzardi, opined that the PrimeCare policies and procedures meet or exceed acceptable standards of care. (**Exhibit E**, P. 62, lines 4-7).  Dr. Guzzardi also opines that the National Commission for Correctional Health Care, through which the Montgomery County Correctional Facility is accredited, is the gold standard in correctional health care standards. (**Exhibit E**, P. 57, lines 1-3).  Dr. Guzzardi's entire opinion regarding the alleged faults of PrimeCare relate to this specific 9-hour period of care and he does not allege any overarching policy issues.

In *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), the Third Circuit discussed the criteria to be applied to determine whether a medical need was "serious" as follows:

> A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981); accord *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977).  The seriousness of an inmate's medical need may also be

determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S. Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See Id*. at 105, 97 S. Ct. at 291. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. *See*, e.g., *Archer*, 733 F.2d at 16.

834        2d at 347 (emphasis added).

Ms. Arcuri was incarcerated at the MCCF for approximately 9 hours on December 26, 2018. Initially, Ms. Arcuri underwent a receiving screening by Medical Assistant Monycka Downing, MA beginning at approximately 2:41 p.m. **Exhibit A**, PCM 00172-PCM 00181. The receiving screen is a both a physical and mental assessment to determine whether someone is stable and where they will be housed. **Exhibit F**, P. 13, lines 20-24 – P. 15, lines 1-2. Notably, MA Downing requested a licensed practical nurse ("LPN") to come evaluate Ms. Arcuri because she noted that she was under the influence and incoherent. **Exhibit A**, PCM 00214-PCM 00215. Nicole McFadden, LPN, evaluated Ms. Arcuri at intake at the request of MA Downing. **Exhibit G**, P. 43, lines 1-24  In her assessment, Nurse McFadden noted that Ms. Arcuri appeared dehydrated. **Exhibit A**, PCM 02271. During the assessment at intake, Ms. Arcuri was given one cup of water and two cups of Gatorade. **Exhibit A**, PCM 02271. Nurse McFadden obtained orders for detox medications from the on-call medical provider to start Ms. Arcuri on the next day. **Exhibit A**, PCM 02210, PCM 02271. The detox protocol was ordered to start the following day, once Ms. Arcuri was no longer under the influence of those substances. **Exhibit G**, P. 55, lines 8-24 – P. 56, lines 1-10. Ms. Arcuri was determined to need level II housing and to be transferred to the medical housing unit. **Exhibit A**, PCM 00214-PCM 00215. Both Nurse McFadden and MA Downing recall in their deposition testimony that they gave verbal instructions to a

correctional officer to transport Ms. Arcuri to the medical housing unit. **Exhibit F**, P. 26, lines 3-24 – P. 27, lines 1-24; **Exhibit G**, P. 62, lines 1-17. Additionally, the instruction to security to have Ms. Arcuri moved to the medical unit is contained in multiple locations in Ms. Arcuri's medical chart. **Exhibit A**, PCM 00214-PCM 00215.

The facts in this case do not show that PrimeCare acted with any deliberate indifference to a serious medical condition of Ms. Arcuri. As explained in *Pearson*, there are two ways that a Plaintiff can meet their burden. There must be either a denial of medical care or inadequate medical treatment. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017). Here, it cannot be argued that there was a denial of medical care. Ms. Arcuri was seen by two medical professionals within an hour of her admission to MCCF. She was given water and Gatorade, determined to be stable, and referred to the medical housing unit. **Exhibit A**, PCM 02271. A detox protocol was ordered to start the following day to address the anticipated physical symptoms of withdrawal. **Exhibit A**, PCM 02210, PCM 02271. All of Ms. Arcuri's immediate medical needs were addressed by PrimeCare.

An inadvertent failure to provide care does not establish a Constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). Plaintiff attempts to assert that the care provided was inadequate. Plaintiff's expert, Dr. Guzzardi does not point to any specific protocol, procedure, or lack of care that was provided. Ms. Arcuri's vitals and assessment indicated that she was under the influence of drugs but was stable. **Exhibit G** – P. 53, lines 7-24 – P. 54, lines 1-3. Dr. Guzzardi's two expert reports allege that both the correctional officers and PrimeCare employees "failed in their responsibilities" but fails to distinguish which entity failed in which ways.

During his deposition testimony, he agreed that the evidence does not support a belief that PrimeCare employees falsified medical records and stated that he no longer believes that conclusion. **Exhibit E**, P. 84, lines 7-12. Dr. Guzzardi opines as to the level of liability PrimeCare holds as a result of their alleged failures of care. Regarding the conclusion relating to the detox orders, Dr. Guzzardi agreed that it would have been appropriate to begin the medication assisted detox treatment the following day, as ordered, had Ms. Arcuri lived. **Exhibit E**, P. 54, lines 19-25 – P. 55, lines 1-4. Despite rendering these conclusions as it relates to the percentage of fault attributed to PrimeCare and others, Dr. Guzzardi admits that he is unfamiliar with the rules regarding PrimeCare staff transporting inmates around the prison. **Exhibit E**, P. 79, lines 16-25 – P. 80, lines 1-4.

At best, the facts in this case rise to an inadvertent failure only to have Ms. Arcuri transferred to the medical housing unit. However, that does not meet the standard of a deliberate indifference to a serious medical need. Especially where it was security staff who was responsible for transferring Ms.Arcuri to the medical housing unit. Thus, PrimeCare is entitled to summary judgment.

      **c. Plaintiff cannot demonstrate negligence by PrimeCare Medical.**

Plaintiffs have failed to meet their burden for the cause of action for negligence. In order to prove a *prima facie* cause of action for medical professional liability, a plaintiff "must establish (1) a duty owed by the physician to the patient, (2) a breach of duty from the physician to the patient, (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) damages suffered by the patient that were a direct result of that harm." *Mitzelfelt v. Kamrim*, 584 A.2d 888, 892 (Pa. 1990). Generally, a plaintiff

must present an expert witness who will testify, to a reasonable degree of medical certainty, that the conduct of the defendant healthcare provider deviated from good and acceptable medical standards, and that such deviation proximately caused the harm suffered. *Hoffman v. Brandywine Hosp.,* 661 A.2d 397, 399-400 (Pa. Super. 1995).

Supporting expert testimony is required, because the negligence of a healthcare provider "encompasses matters not within the ordinary knowledge and experience of laypersons." *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003). Of course, "a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care." *Grossman v. Barke*, 868 A.2d 561, 567 (Pa. Super. 2005).

PrimeCare has filed a *Daubert* Motion seeking to preclude Dr. Guzzardi from testifying at trial. If this Court grant's PrimeCare's Motion, Plaintiffs will be unable to demonstrate a cause of action for professional negligence.

Additionally, Dr. Guzzardi has opined as to the standard of care specifically provided to Ms. Arcuri for the 9 hour period that she was detained at the MCCF prior to her death. However, notably, he does not opine as to which PrimeCare employee, if any, he attributes the alleged failure to meet the standard of care. Ms. Arcuri was personally seen during her intake screening by a medical assistant and a licensed practical nurse. **Exhibit G** – P. 53, lines 7-24 – P. 54, lines 1-3 The licensed practical nurse obtained orders from the nurse practitioner to begin a medication assisted detox the following day. **Exhibit A**, PCM 02210, PCM 02271. During the intake screening, it was determined that Ms. Arcuri should be housed in the medical housing unit both because of her suicide screening and her intoxication. **Exhibit A**, PCM 00214-PCM 00215. Ms.

Arcuri was not sent to the medical housing unit prior to being found unresponsive in her cell. However, she was being checked and monitored regularly between the time she was taken to her cell and when she was found unresponsive. **Exhibit B**, MC011-MC015.  Here, Dr. Guzzardi has not opined as to who he believes failed in their responsibilities.  Therefore, it is respectfully submitted that the PrimeCare Defendants are entitled to summary judgment.

      **d.   Plaintiff cannot demonstrate fraud and deceit by PrimeCare Medical.**

Plaintiffs' Complaint alleges fraud and deceit against PrimeCare Medical.  However, the testimony of their expert seems to contradict that claim.  Each of the supporting allegations in the Complaint seem to have been explained away to the satisfaction of Dr. Guzzardi.  Dr. Guzzardi acknowledges that the facts do not support an allegation of falsifying medical records.  **Exhibit E**, P. 84, lines 7-12.  It has been agreed that the evidence does not suggest that PrimeCare employees claim to have taken Ms. Arcuri's vital signs at 6:14 p.m.  **Exhibit E**, P. 84, lines 7-12.  It has further been explained by Dr. Guzzardi that he no longer believes she used heroin while in the MCCF, given the presence of the 6-monoacetyl morphine only in the vitreous fluid.  **Exhibit E**, P. 46, lines 4-22.  There is no evidence supporting the fraud and deceit claim.  In fact, there is evidence contradicting this claim and Plaintiffs seem to agree.  Therefore, PrimeCare is entitled to summary judgment.

      **e.   Alternatively, this case should be dismissed for lack of subject matter jurisdiction.**

As stated above, Plaintiffs cannot demonstrate a violation of Ms. Arcuri's constitutional rights.  As such, it has been requested that Plaintiffs' federal cause of action be dismissed.

28 U.S.C. § 1367 provides "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. However, despite this grant of supplemental jurisdiction, the District Courts "may decline to exercise supplemental jurisdiction over a claim" if any of the following factors are met:

(a) the claim raises a novel or complex issue of State law,

(b) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(c) the district court has dismissed all claims over which it has original jurisdiction, or

(d) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Indeed, 28 U.S.C. § 1447(c) provides, in pertinent part, as follows: '(i)f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.'" *Fleeman v. Toyota Motor Sales*, 288 F. Supp. 2d 726, 728 (S.D. W. Va. 2003), (emphasis in original).

District courts have specifically recognized that professional negligence claims are more appropriately heard in state court. In *Gallo v. Wash. County*, 2009 U.S. LEXIS 7958, 30-31 (W.D. Pa. Feb. 4, 2009), the Court noted "[t]he remaining claims are brought by a Pennsylvania resident and relate to alleged professional negligence of Pennsylvania doctors and medical personnel. The state court generally handles such cases and has substantial expertise in such cases." The Court went on to hold, "[there being no 'exceptional' reason why the Court should retain this case involving only a state claim, the Court will dismiss the professional negligence count without prejudice for said claim to be re-filed in state court."

If this Court enters summary judgment in favor of PrimeCare concerning Plaintiff's federal cause of action; it is submitted that this Court should exercise its discretion in dismissing the remaining state law causes of action. Plaintiffs would be free to transfer this matter to the Court of Common Pleas of Montgomery County.

## V.  CONCLUSION

For the foregoing reasons, PrimeCare Medical respectfully request that this Honorable Court enter an Order granting their Motion for Summary Judgment and dismissing all claims against them with prejudice. Alternatively, if the federal cause of action is dismissed, it is requested that this Court dismiss the remaining state law causes of action for a lack of subject matter jurisdiction.

Respectfully submitted,

MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN

By:  /s/ John R. Ninosky
JOHN R. NINOSKY, ESQUIRE
PA Attorney ID No. 78000
100 Corporate Center Drive, Suite 201
Camp Hill, PA  17011
Telephone (717) 651-3709
Facsimile (717) 651-3707
jrninosky@mdwcg.com

Date:                                                              Attorney for PrimeCare Medical, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the ___ day of April, 2022, the foregoing *Motion for Summary Judgment* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record, which service satisfies the requirements of the Federal Rules of Civil Procedure.

Craig A. Sopin, Esquire
The Curtis Center, Suite 160W
601 Walnut Street
Philadelphia, PA  19106
craiga@erols.com
*Attorney for Plaintiff*

                    MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN

By:   */s/ John R. Ninosky*
       John R. Ninosky

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon the following known counsel and parties of record this _____ of April, 2022, via United States First-Class Mail, postage prepaid:

                                              MARSHALL, DENNEHEY, WARNER
                                              COLEMAN & GOGGIN

                                              By:_____
                                                       John R. Ninosky