IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP J. ARCURI and MELANIE ARCURI, Administrators of the ESTATE OF ANDREA MARIE ARCURI,<br><br>             Plaintiff,<br><br>      v.<br><br>PRIMECARE MEDICAL INC.,<br><br>             Defendant. | CIVIL ACTION<br>NO. 20-05408 |

**Slomsky, J.**                                                                                                                  **August 16, 2022**

**OPINION**

**I.      INTRODUCTION**

This action arises from the death of Andrea Arcuri ("Andrea"), who passed away shortly after arriving at the Montgomery County Correctional Facility ("MCCF"). On October 29, 2020, Plaintiffs Philip and Melanie Arcuri, the administrators of the Estate of Andrea M. Arcuri, ("Plaintiffs") filed this action against Montgomery County, MCCF, multiple individuals who work as either corrections officers or probation officers for Montgomery County ("Montgomery County Defendants"), and PrimeCare Medical ("PrimeCare"). (See Doc. No. 1.) The claims against the Montgomery County Defendants were either dismissed by the Court or settled by the parties, leaving PrimeCare as the only remaining defendant in this case. (Doc. No. 55-1 at 1.)

On April 18, 2022, PrimeCare moved to preclude from testifying at trial Plaintiff's sole medical expert, Lawrence Guzzardi, M.D., claiming he is (1) neither a qualified expert witness (2) nor a reliable expert under Federal Rule of Evidence 702 (the "Motion"). (Doc. No. 48.) Rule 702 of the Federal Rules of Evidence provides as follows:

1

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Plaintiffs filed a response in opposition to the Rule 702 Motion. (Doc. No. 50.) On June 8, 2022, the Court held a hearing on the Motion. For reasons that follow, the Motion (Doc. No. 48) will be denied.

## II.  BACKGROUND

### A.  Factual Background

On December 26, 2018, at approximately 1:30 p.m., Andrea Arcuri arrived at the Montgomery County Adult Probation Office for a required routine visit. (Ex. C at 2.) At the office, she displayed several symptoms indicating she was under the influence of drugs. (Id.) After probation officers determined that Andrea's recent drug use violated the terms of her probation, they transported her to MCCF at approximately 2:15 pm. (Id.)

At MCCF, medical assistant Monycka Downing ("MA Downing") conducted a Receiving Screening at 3:19 p.m. An on-call medical provider ordered that detoxification medication be administered to Andrea starting the following day. (Ex. D at 15.) The provider also ordered that Andrea be moved to the medical housing unit at the prison, which never happened. (Id. at 17.) By about 3:35 p.m., Licensed Practical Nurse ("LPN") Nicole McFadden completed Andrea's medical intake in which she noted that Andrea was dehydrated, so she gave her one cup of water and two cups of Gatorade. (Id. at 14-15.) At 3:58 p.m., Corrections Officers escorted Andrea to

Admissions Cell 9. Corrections officers walked past Admissions Cell 9 many times throughout that evening. (Ex. E at 3-5.)

At about 10:56 p.m., a corrections officer initiated a medical emergency after Andrea did not respond when the officer spoke to her, and she looked pale in the face. (Id. at 2; Ex. D, 16.) Shortly after, Emergency Medical Services transported Andrea to a hospital, where she was pronounced dead at 11:41 p.m. (Ex. E, 14.)

In his expert report, Dr. Guzzardi opined that PrimeCare employees should have transferred Andrea to the prison's medical unit soon after her arrival and, had she been transferred to the medical unit and received routine medical care sooner, Andrea "was 100% likely to survive her drug related obtundation and dehydration." (Ex. D at 1.) He stated that given Andrea's medical history and behavior that day, caring for Andrea required "extra vigilance," which was not provided when PrimeCare employees allowed Andrea to be placed alone in Cell 9. (Id. at 2.)

### B. Daubert Motion

Plaintiffs' only remaining claims against PrimeCare are for medical negligence and a civil rights violation under 42 U.S.C. 1983. After initiating the present action, Plaintiffs retained an expert witness, Lawrence Guzzardi, M.D. ("Dr. Guzzardi"), to testify about the standard of care that was owed to Andrea during her time at MCCF and how Defendant's conduct on December 26, 2018 did not meet that standard. (Ex. H.) In its Motion to preclude Dr. Guzzardi from testifying at trial, PrimeCare argues that he should be barred from offering any standard of care testimony at trial because (1) he is not qualified, and (2) his opinions are unreliable. (Doc. No. 48 at 1.)

In this regard, PrimeCare first contends that Dr. Guzzardi lacks the necessary qualifications to testify to the standard of care for medical treatment in a correctional facility because medical

care for someone incarcerated is "markedly different than in the general public." (Doc. No. 53 at 2.) PrimeCare contends that, because Dr. Guzzardi has never practiced medicine in a correctional facility, he does not have the specialized knowledge that would render him qualified to give expert testimony in this case. (Doc. No. 48 at 13.) In response, Plaintiffs argue that Dr. Guzzardi is qualified under Rule 702 because of his medical education and practical experience as a physician. (Doc. No. 50 at 8.) They submit that caring for a patient in a correctional facility is not distinct from caring for patients in other environments and that it does not require admission to a formally established board or fellowship for a medical doctor to offer an opinion on caring for patients in a prison. (Doc. No. 50 at 8.) Most notably, Plaintiffs argue that because PrimeCare has even used Dr. Guzzardi as an expert witness in the past, PrimeCare's argument that Dr. Guzzardi is not qualified to testify in this case is unfounded. (Doc. 50 at 11.)

Second, PrimeCare contends that Dr. Guzzardi's testimony is not reliable because his conclusions are not based on valid scientific reasoning and methodology. It asserts that Dr. Guzzardi's lack of work experience in a prison renders his opinion unreliable. In response, Plaintiffs maintain that Dr. Guzzardi's opinion is based on valid scientific methodology because he reviewed all pertinent records and used his medical expertise to arrive at his conclusions, which are explained in his expert report. (Doc No. 50 at 16.)

### III.    LEGAL STANDARD

The trial court acts as "gatekeeper" in determining whether an expert witness is allowed to provide testimony as to the standard of care. Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). Under Rule 702, courts must address "a trilogy of restrictions"

before admitting expert testimony: (1) qualification, (2) reliability, and (3) fit.[1] Id. (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741–43 (3d Cir. 1994)).

> Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief. In sum, Daubert holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony must fit the issues of the case.

Id. "[T]he Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact. Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997). As the Supreme Court in Daubert stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595 (1993).

IV. ANALYSIS

**A. Dr. Guzzardi is qualified because of his experience and education.**

PrimeCare contends that Dr. Guzzardi is not qualified to be an expert witness in this case because he lacks relevant education and experience. Plaintiffs, on the other hand, argue that Dr. Guzzardi's education and experience make him qualified to testify. And regarding both arguments, the following applies: "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Pineda v. Ford

---

[1] PrimeCare does not contest the third element—that the testimony fits the issues in this case.

Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

Here, Dr. Guzzardi is qualified to provide expert testimony under Rule 702. As demonstrated by his Curriculum Vitae, Dr. Guzzardi is a physician who earned his medical degree at Jefferson Medical College in 1971. (Id.) He became board-certified in family medicine, emergency medicine, and medical toxicology. (Id.) From 2019 to the present, Dr. Guzzardi has been certified as a practitioner with the National Commission for Correctional Healthcare, a non-profit organization concerned with health care treatment in correctional facilities. (Id.) He is a member of a consultant advisory group on jail accreditation of the American Medical Association and is a member and chairman of the accreditation committee at the National Committee of National Healthcare. (Id.) In addition, Dr. Guzzardi has authored multiple publications covering medical care in correctional facilities. (Id.) These qualifications make him qualified to testify as an expert witness under Daubert. Any objections Defendant has regarding Dr. Guzzardi's qualifications may be brought out during cross-examination or challenged with an opposing expert witness.

As noted, the Third Circuit Court of Appeals has held that it is error for a district court to prevent an expert witness from testifying because the court feels that the witness is not the most qualified expert. Holbrook, 80 F.3d at 782. In Holbrook, the plaintiffs sought to have the decedent's treating physician, who specialized in internal medicine and had experience treating lung diseases, testify about medical procedures he took to diagnose the decedent with mesothelioma. Id. at 781. The district court did not allow the physician to testify because it believed he was not qualified, opining that this kind of testimony should be given by an oncologist. Id. On appeal, the Third Circuit reversed, holding that the physician was competent to testify,

even though he may not "in the court's eyes, be the 'best' qualified." Id.  Thus, for all these reasons, this Court finds that Dr. Guzzardi is qualified to testify at the trial.

### B. Dr. Guzzardi's opinions are reliable because they are based on valid reasoning and methodology.

Next, PrimeCare asserts that Dr. Guzzardi's opinions are unreliable because he provides no medical basis for his conclusions, and he lacks enough relevant work experience to proffer reliable testimony on the matter.  In response, Plaintiffs maintain that Dr. Guzzardi's opinion is based on valid scientific methodology because he reviewed the pertinent records and used his medical expertise to arrive at his conclusions, which are explained in his expert report.  (Doc No. 50 at 16).

Dr. Guzzardi's testimony is reliable under Daubert.  To determine whether an expert's testimony is reliable, a court must review the reasoning and methodology underlying the conclusions in the opinion.  Daubert, 509 U.S. at 592.  "The evidentiary requirement of reliability is lower than the merits standard of correctness." Id.  "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Id. at 244 (quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir.1998)).

Here, Dr. Guzzardi's testimony meets this standard and therefore is reliable under Daubert. Dr. Guzzardi reviewed Andrea's prior medical reports and the reports created during and after the nine hours Andrea was at MCCF. (Ex. B at 1.)  He used his experience and expertise as a physician to reach his conclusion that PrimeCare should have taken different measures in treating Andrea. (Id.)  His opinion was stated to a reasonable degree of medical certainty.  (Id. at 1-2.)

In addition, the Third Circuit has held that an expert's opinion may be deemed reliable if it is based on the witness's expertise and knowledge of the subject he is testifying about. Kannankeril v. Terminix Int'l, 128 F.3d 802, 809 (3d Cir. 1997). And an expert may rely on accurate and complete medical records. Id. In Kannankeril, the district court excluded a physician from testifying that pesticide applied by an exterminator company caused the plaintiff's illness because it concluded that his opinion was unreliable under Rule 702. Id. The Third Circuit reversed, holding that a physician's testimony is reliable when a physician bases his opinion on, among other things, the patient's medical records and the physician's "general experience and . . . medical knowledge." Id. Dr. Guzzardi's opinion here is based on a review of similar kinds of records, his general experience, and his medical knowledge. Therefore, he is reliable and will be permitted to testify at trial. Once again, the reliability of his opinions may be tested by competing expert testimony and cross-examination at trial.

**V.   CONCLUSION**

For the foregoing reasons, Defendant PrimeCare's Motion will be denied. An appropriate Order follows.